ELECTRONICALLY FILED
6/17/2008 11:08 AM
CV-2008-901907.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| **CHARLES E. WILSON, individually, and** )<br>**on behalf of all persons and entities** )<br>**who paid for sewer service at any time,** )<br>**from January 1, 1993 until present,** )<br>**and all other citizens and/or** )<br>**residents of Jefferson County, Alabama** )<br>**who are damaged as a result of the** )<br>**conduct alleged herein;** ) | |

) **CIVIL ACTION NO.:_____**

      **Plaintiffs,** )

)

**vs.** )

)

**JPMORGAN CHASE & Co., a corporation;** )
**MORGAN KEEGAN & CO., Inc., a** )
**corporation;** )
**REGIONS BANK, a corporation;** )
**CHARLES LECROY, an individual;** )
**DOUGLAS MACFADDIN, an individual;** )
**GOLDMAN, SACHS SPECIALTY LENDING** )
**GROUP, L.P., a partnership;** )
**BEAR STERNS FUNDING, INC., corporation;** )
**BLOUNT PARRISH & ROTON, INC., a** )
**corporation;** )
**WILLIAM BLOUNT, an individual;** )
**BANK OF AMERICA, NATIONAL** )
**ASSOCIATION, an association;** )
**LEHMAN BROTHERS, INC. a corporation;** )
**GARDNYR-MICHAEL CAPITAL, INC.** )
**a corporation;** )
**LARRY LANGFORD, an individual;** )
**GARY WHITE, an individual;** )
**STEVE SMALL, an individual;** )
**BETTYE FINE COLLINS, an individual;** )
**JEFF GERMANY, an individual;** )
**MARY BUCKALEW, an individual;** )
**SHEILA SMOOT, an individual;** )
**STEVE SAYLER, an individual;** )
**CDR FINANCIAL SERVICES, INC., a** )
**corporation;** )
**FINANCIAL GUARANTY INSURANCE CO.,** )
**XL CAPITAL ASSURANCE INC.,** )
**a corporation;** )
**and all fictitious defendants listed herein:** )

**FICTITIOUS DEFENDANTS 1-50**, whether singular or plural, plaintiffs hereby intending to designate the entity or those entities, including persons who or which had any role in the decisions, marketing, underwriting, sale, advice, consultation, arrangement, solicitation, providing of swaps, legal counsel, tax counsel, remarketing, etc. related to the issuance of bonds and/or swaps concerning Jefferson County, Alabama including but not limited to bonds and swaps issued/entered into for the Jefferson County sewer system; **DEFENDANTS 51-75**, whether singular or plural, plaintiff hereby intending to designate the entity or those entities, including persons, who negligently, improperly and/or fraudulently insured the Jefferson County bonds and/or financial transactions; **DEFENDANTS 76-100**, whether singular or plural, plaintiff hereby intending to designate the entity or those entities, including persons who negligently, improperly and/or fraudulently advised the Jefferson County Commission on the bond and/or swap transactions; **DEFENDANTS 101-125**, whether singular or plural, plaintiff hereby intending to designate the entity or entities, including persons who negligently and/or fraudulently sold, encouraged, and/or suggested that Jefferson County move from fixed to floating and/or adjustable rates, whether set by agreement, auction or otherwise; **DEFENDANTS 126-150**, whether singular or plural, plaintiff hereby intending to designate the entity or entities, including persons who breached their fiduciary duty and/or negligently or fraudulently advised, encouraged, allowed, and/or suggested that Jefferson County should move from fixed to floating and/or adjustable rates, whether set by agreement, auction or otherwise; **DEFENDANTS 151-180,** whether singular or plural, plaintiff hereby intending to designate the entity or entities, including persons who conspired and/or knowingly participated in the scheme or plan to usurp and defraud Plaintiffs through the institution, request and/or receipt of excessive fees; **DEFENDANTS 181-200**, whether singular or plural, plaintiff hereby intending to designate the entity or entities, including persons, who with or without Larry Langford, knowingly or purposefully participated in a scheme, plan or events which led to the wrongful overcharging of monies and/or the wrongful collection of funds from Plaintiffs via a series of financial acts and/or activities unnecessary to the proper functioning of county government; **DEFENDANTS 201-250**, whether singular or plural, plaintiff hereby intending to designate the entity or entities, including persons, who served on the Jefferson County Commission between 1993 and 2008, who negligently and/or purposely failed to perform their duties in the interest of Plaintiffs and/or performed duties outside the scope of their authority and/or committed ultra vires act(s); **DEFENDANTS 251-280**, whether singular or plural, plaintiff hereby intending to designate the entity or entities, including persons, who breached their fiduciary duty and/or negligently or fraudulently advised, encouraged, allowed, and/or suggested that Jefferson County should involve itself in multiple refinancings and/or swap transactions; **DEFENDANTS 281-300**, whether singular or plural, that entity or those entities who or which was the predecessor of any of the entities described above; **DEFENDANTS 301-350**, whether singular or plural, that person or those persons, that entity or those entities, other than those described above, whose torturous, outrageous, intentional, reckless, negligent, wanton, breach of contract, or other wrongful conduct of which contributed to cause the injuries to the Plaintiffs made the basis of this lawsuit;

2

**DEFENDANTS 351-380**, whether singular or plural, that entity or those entities who or which are vicariously or directly liable for the damages sustained by Plaintiffs; **DEFENDANTS 381-410**, whether singular or plural, that person, who, as an owner, stockholder, partner, associate, employee, or agent of any of the fictitious parties who undertook to provide any financial, consulting or related service on the occasion(s) made the basis of this suit, the negligence, breach of contract or other actionable conduct of whom contributed to cause the injury to Plaintiffs; **DEFENDANTS 411-430**, whether singular or plural, that entity which, concerning the occasion made the basis of this suit, was the principal of any of the named or above-described fictitious party defendants; **DEFENDANTS 431-450**, whether singular or plural, that entity which is the successor-in-interest of the named or above-described fictitious party defendants; **DEFENDANTS 451-480**, whether singular or plural, that entity or those entities, including persons, who or which provided any insurance coverage, of whatever kind or character, for any of the named or fictitious party defendants listed or named herein; **DEFENDANTS 481-530**, whether singular or plural, plaintiff hereby intending to designate the entity or entities responsible for the legal wrongs complained of in the complaint; **DEFENDANT 531-560**, whether singular or plural, plaintiff hereby intending to designate the entity, entities, or individual(s) who are the owners and/or operators of any organization, business and/or service provider responsible for the legal wrongs complained of in the complaint; **DEFENDANT 561**, whether singular or plural, Plaintiffs hereby intending to designate the entity which is the correct legal description of the entity described or referred to as JPMorgan Chase & Co.; **DEFENDANT 562**, whether singular or plural, Plaintiffs hereby intending to designate the entity which is the correct legal description of the entity described or referred to as Morgan Keegan & Company; **DEFENDANT 563**, whether singular or plural, Plaintiffs hereby intending to designate the entity which is the correct legal description of the entity described or referred to as Regions Bank; **DEFENDANT 564**, whether singular or plural, Plaintiffs hereby intending to designate the correct name of the person described or referred to as Charles LeCroy; **DEFENDANT 565**, whether singular or plural, Plaintiffs hereby intending to designate the entity which is the correct legal description of the entity described or referred to as Goldman Sachs Specialty Lending Group, L.P.; **DEFENDANT 566**, whether singular or plural, Plaintiffs hereby intending to designate the entity which is the correct legal description of the entity described or referred to as Blount Parrish & Roton, Inc.; **DEFENDANT 567**, whether singular or plural, Plaintiffs hereby intending to designate the correct name of the person described or referred to as William Blount; **DEFENDANT 568**, whether singular or plural, Plaintiffs hereby intending to designate the entity which is the correct legal description of the entity described or referred to as Bank of America, N.A.; **DEFENDANT 569**, whether singular or plural, Plaintiffs hereby intending to designate the entity which is the correct legal description of the entity described or referred to as Lehman Brothers, Inc.; **DEFENDANT 570**, whether singular or plural, Plaintiffs hereby intending to designate the entity which is the correct legal description of the entity described or referred to as Gardnyr-Michael Capital, Inc.; **DEFENDANT 571**, whether singular or plural, Plaintiffs hereby intending to designate the correct name of the person described or referred to as Larry Langford; **DEFENDANT 572**, whether singular or plural, Plaintiffs hereby intending to designate the correct name of the

3

person described or referred to as Gary White; **DEFENDANT 573**, whether singular or plural, Plaintiffs hereby intending to designate the correct name of the person described or referred to as Steve Sayler; **DEFENDANT 574**, whether singular or plural, Plaintiffs hereby intending to designate the entity which is the correct legal description of the entity described or referred to as CDR Financial Services, Inc.; **DEFENDANT 575**, whether singular or plural, Plaintiffs hereby intending to designate the entity which is the correct legal description of the entity described or referred to as Financial Guaranty Insurance Co.; **DEFENDANT 576**, whether singular or plural, Plaintiffs hereby intending to designate the entity which is the correct legal description of the entity described or referred to as XL Capital Assurance Inc.; **DEFENDANT 577**, whether singular or plural, Plaintiffs hereby intending to designate the correct name of the person described or referred to as Douglas MacFaddin; **DEFENDANT 577**, whether singular or plural, Plaintiffs hereby intending to designate the entity which is the correct legal description of the entity described or referred to as Bear Sterns Funding, Inc.; **DEFENDANT 578**, whether singular or plural, Plaintiffs hereby intending to designate the correct name of the person described or referred to as Sheila Smoot; **DEFENDANT 579**, whether singular or plural, Plaintiffs hereby intending to designate the correct name of the person described or referred to as Steve Small; **DEFENDANT 580**, whether singular or plural, Plaintiffs hereby intending to designate the correct name of the person described or referred to as Mary Buckalew; **DEFENDANT 581**, whether singular or plural, Plaintiffs hereby intending to designate the correct name of the person described or referred to as Bettye Fine Collins; **DEFENDANT 582**, whether singular or plural, Plaintiffs hereby intending to designate the correct name of the person described or referred to as Jeff Germany. Plaintiff avers that the identity of the fictitious party defendants herein is otherwise unknown to plaintiff at this time, or if their names are known to plaintiff at this time, their identify as proper party defendants is not known to plaintiff at this time, and their true names will be substituted by amendment when ascertained.

                        )

       **Defendants.**                )

# C O M P L A I N T

COMES NOW the Plaintiff, CHARLES E. WILSON, individually, and on behalf of person and entities to paid for sewer service within Jefferson County, Alabama at any time, from January 1, 1993 until present, and all other citizens and/or residents of Jefferson County, Alabama who are damaged as a result of the conduct alleged herein.  Plaintiffs come with their claims against the Defendants, both named and fictitious, as follows:

4

## PARTIES AND JURISDICTION

1.      Plaintiff, CHARLES E. WILSON (hereinafter "Wilson"), is an adult over the age of nineteen and is and was at all times material to this Complaint a resident citizen and payor of sewer charges in Jefferson County, Alabama.  Plaintiff Wilson has a direct pecuniary interest in this litigation.  Plaintiff Wilson brings suit on behalf of all persons and/or entities who paid sewer service charges within Jefferson County at any time, from January 1, 1993 until present, and all other citizens and/or residents of Jefferson County, Alabama who are damaged as a result of the conduct alleged herein.

2.      Defendant, JPMORGAN CHASE & CO. (hereinafter "JP Morgan"), is a foreign corporation doing business in the State of Alabama.  JP Morgan, upon information and belief, provided financial services, products and/or advice to the Jefferson County Commission that caused or contributed to the damages of the Plaintiff and members of the class as alleged herein.

3.      Defendant, MORGAN KEEGAN & COMPANY, INC. (hereinafter "MK"), is a foreign corporation doing business in the State of Alabama.  MK, upon information and belief, provided financial services, products and/or advice to the Jefferson County Commission that caused or contributed to the damages of the Plaintiff and members of the class as alleged herein.

4.      Defendant, REGIONS BANK (hereinafter "RB"), is an Alabama corporation and is the principal of MK.

5.      Defendant, CHARLES LECROY (hereinafter "LeCroy"), worked for JP Morgan and Raymond James & Associates, Inc.  Upon information and belief, LeCroy was involved in the JP Morgan transactions with Jefferson County Commission that caused or contributed to the

5

damages of the Plaintiff and members of the class as alleged herein.

6.      Defendant, DOUGLAS MACFADDIN (hereinafter "MacFaddin"), was the former head of municipal derivative sales for JP Morgan. Upon information and belief, MacFaddin was involved in the JP Morgan transactions with Jefferson County Commission and that caused or contributed to the damages of the Plaintiff and members of the class as alleged herein.

7.      Defendant, GOLDMAN SACHS & SPECIALITY LENDING GROUP, L.P., (hereinafter "Goldman Sachs"), is a foreign partnership doing business in the State of Alabama. Goldman Sachs, upon information and belief, provided financial services, products and/or advice to the Jefferson County Commission that caused or contributed to the damages of the Plaintiff and members of the class as alleged herein.

8.      Defendant, BEAR STEARNS FUNDING, INC. (hereinafter "Bear Stearns"), is a foreign corporation doing business in the State of Alabama. Bear Sterns, upon information and belief, provided financial services, products and/or advice to the Jefferson County Commission that caused or contributed to the damages of the Plaintiff and members of the class as alleged herein.

9.      Defendant, BLOUNT PARRISH, & ROTON, INC. (hereinafter "Blount Parrish"), is an Alabama corporation with its principal place of business in Montgomery, Alabama. Blount Parrish, upon information and belief, provided financial services, consultation, products and/or advice to the Jefferson County Commission that caused or contributed to the damages of the Plaintiff and members of the class as alleged herein.

10.     Defendant, WILLIAM BLOUNT, is co-owner and chairman of Blount Parrish and is a broker-dealer registered with the Securities and Exchange Commission. William Blount, upon

information and belief, was either directly or indirectly involved in many if not all of the financial transactions made the subject of this Complaint and that caused or contributed to the damages of the Plaintiff and members of the class as alleged herein.

11.     Defendant, BANK OF AMERICA, N.A.  (hereinafter "Bank of America"), is a foreign association doing business in the State of Alabama.  Bank of America, upon information and belief, provided financial services, products and/or advice to the Jefferson County Commission that caused or contributed to the damages of the Plaintiff and members of the class as alleged herein.

12.     Defendant, LEHMAN BROTHERS, INC. (hereinafter "Lehman Brothers"), is a foreign corporation doing business in the State of Alabama.  Lehman Brothers, upon information and belief, provided financial services, products and/or advice to the Jefferson County Commission that caused or contributed to the damages of the Plaintiff and members of the class as alleged herein.

13.     Defendant, GARDNYR-MICHAEL CAPITAL, INC. (hereinafter "Gardnyr Michael Capital") is a Florida corporation doing business in the State of Alabama.  Gardnyr Michael Capital, upon information and belief, provided financial services, products and/or advice to the Jefferson County Commission that caused or contributed to the damages of the Plaintiff and members of the class as alleged herein.

14.     Defendant, LARRY LANGFORD (hereinafter "Langford"), is currently the Mayor of Birmingham.  At the time, however, of the transactions that form the basis of this Complaint, Defendant Langford served as a member and/or President of the Jefferson County Commission.  Upon information and belief, Defendant Langford is an adult resident of Alabama.

7

Defendant Langford is sued in his individual capacity. In such individual capacity, this Defendant acted outside his discretion and acted fraudulently, willfully, maliciously, in bad faith and otherwise committed ultra vires acts that caused or contributed to the damages of the Plaintiff and members of the class as alleged herein.

15.     Defendant, GARY WHITE, (hereinafter "White"), was acting as a Jefferson County Commissioner at the applicable times herein alleged. Upon information and belief, Defendant White is an adult resident of Alabama. Defendant White is sued in his individual capacity. In such individual capacity, it is alleged that this Defendant acted outside his discretion and acted fraudulently, willfully, maliciously, in bad faith and otherwise committed ultra vires acts that caused or contributed to the damages of the Plaintiff and members of the class as alleged herein.

16.     Defendant, STEVE SMALL, (hereinafter "SMALL"), was acting as a Jefferson County Commissioner at the applicable times herein alleged. Upon information and belief, Defendant Small is an adult resident of Alabama. Defendant Small is sued in his individual capacity. In such individual capacity, it is alleged that this Defendant acted outside his discretion and acted fraudulently, willfully, maliciously, in bad faith and otherwise committed ultra vires acts that caused or contributed to the damages of the Plaintiff and members of the class as alleged herein.

17.     Defendant, BETTYE FINE COLLINS, (hereinafter "Collins"), was acting as a Jefferson County Commissioner at the applicable times herein alleged. Upon information and belief, Defendant Collins is an adult resident of Alabama. Defendant Collins is sued in her

individual capacity. In such individual capacity, it is alleged that this Defendant acted outside her discretion and acted fraudulently, willfully, maliciously, in bad faith and otherwise committed ultra vires acts that caused or contributed to the damages of the Plaintiff and members of the class as alleged herein.

18.     Defendant, JEFF GERMANY, (hereinafter "Germany"), was acting as a Jefferson County Commissioner at the applicable times herein alleged. Upon information and belief, Defendant Germany is an adult resident of Alabama. Defendant Germany is sued in his individual capacity. In such individual capacity, it is alleged that this Defendant acted outside his discretion and acted fraudulently, willfully, maliciously, in bad faith and otherwise committed ultra vires acts that caused or contributed to the damages of the Plaintiff and members of the class as alleged herein.

19.     Defendant, MARY BUCKALEW, (hereinafter "Buckalew"), was acting as a Jefferson County Commissioner at the applicable times herein alleged. Upon information and belief, Defendant Buckalew is an adult resident of Alabama. Defendant Buckalew is sued in her individual capacity. In such individual capacity, it is alleged that this Defendant acted outside her discretion and acted fraudulently, willfully, maliciously, in bad faith and otherwise committed ultra vires acts that caused or contributed to the damages of the Plaintiff and members of the class as alleged herein.

20.     Defendant, SHEILA SMOOT, (hereinafter "Smoot"), was acting as a Jefferson County Commissioner at the applicable times herein alleged. Upon information and belief, Defendant Smoot is an adult resident of Alabama. Defendant Smoot is sued in her individual

capacity.  In such individual capacity, it is alleged that this Defendant acted outside her discretion and acted fraudulently, willfully, maliciously, in bad faith and otherwise committed ultra vires acts that caused or contributed to the damages of the Plaintiff and members of the class as alleged herein.

21.     Defendant, STEVE SAYLER, (hereinafter "Sayler"), was acting as the Jefferson County finance director at the applicable times herein alleged.  Upon information and belief, Defendant Sayler is an adult resident of Alabama.  Defendant Sayler is sued in his individual capacity.  In such individual capacity, it is alleged that this Defendant acted outside his discretion and acted fraudulently, willfully, maliciously, in bad faith and otherwise committed ultra vires acts that caused or contributed to the damages of the Plaintiff and members of the class as alleged herein.

22.     Defendant, CDR FINANCIAL SERVICES, INC. (hereinafter "CDR"), is a foreign corporation doing business in the State of Alabama.  CDR, upon information and belief, provided financial services, products and/or advice to the Jefferson County Commission that caused or contributed to the damages of the Plaintiff and members of the class as alleged herein.

23.     Defendant, FINANCIAL GUARANTY INSURANCE CO., (hereinafter "FGIC"), is a foreign insurance company doing business in the State of Alabama.   Upon information and belief, FGIC served as an insurer of the Jefferson County auction rate securities and whose action caused or contributed to the damages of the Plaintiff and members of the class as alleged herein.

24.     Defendant, XL CAPITAL ASSURANCE INC. (hereinafter "XL-CA"), is a

foreign insurance company doing business in the State of Alabama. Upon information and belief, XL-CA served as an insurer of Jefferson County bonds and whose action caused or contributed to the damages of the Plaintiff and members of the class as alleged herein.

25. Hereinafter, the word "Defendants" includes those above-named Defendants and all Fictitious Party Defendants.

## FACTUAL INTRODUCTION

26. The genesis of this civil action can to be traced to the series of events over the last eleven to fifteen years where the Jefferson County Commissioners, various investment banks, insurers and advisors have continuously failed to act in the best interests of the citizens of Jefferson County. Through a long series of ill-conceived financial transactions, the sewer ratepayers of Jefferson County have been saddled with a debt of roughly $11,491 per residential sewer customer, which is the highest in the nation. Also, the sewer ratepayers have seen exponential growth, an increase of 329%, in their sewer rates in the last eleven years. Charles Wilson, on behalf of himself and all other sewer ratepayers, citizens and residents of Jefferson County, brings this suit in order to challenge the misappropriation and/or misapplication of public funds based upon his and his fellow citizens and residents respective equitable ownership in such funds, and their liability to replenish the public treasury for any deficiency. Further, as the Plaintiff and the members of this purported class also have a pecuniary interest, Plaintiffs bring suit to recover monetary damages for the losses they have sustained due to Defendants wrongful conduct and dereliction of duties, which has directly caused or contributed to the

11

wrongful increases in their sewer rates. Finally, and importantly, Plaintiffs wish to rectify the daunting and precarious financial position that has been thrust upon them by the Defendants in this case and to ensure that sewer funds do not continue to be diverted from their purpose of maintaining, supporting and/or expanding the available sewer service.

## FACTS COMMON TO ALL COUNTS

27. In December of 1993, three taxpayer citizens filed a lawsuit against the Jefferson County Commission alleging untreated sewage was being discharged into the Black Warrior and Cahaba rivers in violation of the federal Clean Water Act.

28. The U.S. Environmental Protection Agency joined the taxpayers in the lawsuit.

29. In December 1996, Jefferson County settled the case by agreeing to construct a sewer system capable of collecting the untreated sewage and cleaning the water.

30. In 1997, Jefferson County began selling bonds to raise money for the project.

31. Most of said bond sales were done without competitive bidding and were arranged by Charles LeCroy, a banker at St Petersburg, Florida-based Raymond James & Associates Inc.

32. LeCroy was later hired by defendant JP Morgan bringing the Jefferson County bond debt work with him to JP Morgan.

33. The debt issued during this time was primarily issued with a fixed interest rate.

34. Between 1997 and 2002, Jefferson County issued roughly $3 billion of sewer debt. Most of this debt was at a "fixed" interest rate.

12

35.     That changed, beginning in October 2002, when defendant Gary White was Jefferson County Commission President.

36.     In October 2002, Jefferson County Commissioners, including Gary White, based upon the "advice" of defendant JP Morgan by and through its agents, employees and/or assigns including but not limited to Charles LeCroy, unanimously voted to refinance $839.5 million of fixed interest sewer debt.

37.     This vote led to the 2002-C financing, which included auction-rate securities and variable interest bonds.

38.     At this time, 68% of Jefferson County's sewer debt was fixed and 32% was essentially a floating or variable rate.

39.     In June 2002, defendant Larry Langford became a member of the Jefferson County Commission. He was elected President of the Commission and from 2002 until 2007 served as the Commissioner of Finance and General Services. .

40.     Upon information and belief, Defendant Langford in his tenure as County Commission President and Commissioner of Finance and General Services, along with other commissioners, based upon their own decisions, along with the advice of defendant JP Morgan by and through their employees, agents and/or assigns, and other defendant investment organizations, both named and fictitious, permitted the issuance of $2.2 billion in adjustable rate bonds and auction rate securities.

41.     On April 22, 2003, a resolution was passed by the Jefferson County Commission authorizing a $1.1 billion dollar sewer bond issue. ("the 2003-B bonds")

13

42.     Defendants JP Morgan, Goldman Sachs, Blount Parrish and other fictitiously named parties were involved in the 2003-B issuance.

43.     On July 1, 2003, a resolution was passed by the Jefferson County Commission authorizing a $1 billion dollar bond issue, ("the 2003-C bonds").

44.     Defendants JP Morgan, Blount Parrish and other fictitiously named parties were involved in the 2003-C issuance.

45.     On July 14, 2003, Jefferson County entered into a $789 million swap agreement with JP Morgan.

46.     Defendant Langford signed the swap agreement on behalf of Jefferson County.

47.     The swap agreement was to coincide with the 2003-C bond offering closing date.

48.     On November 24, 2003, the County executed, via Langford's signature, a $111 swap agreement with JP Morgan related to interest payments on the 2003-C bonds.

49.     On April 27, 2004, Langford and other Jefferson County Commissioners approved a resolution authorizing a $1.5 billion swap agreement with defendant Bear Sterns.

50.     Jefferson County also entered into a $380 million swap agreement with Defendant Bank of America at or around the same time period as the $1.5 billion swap.

51.     Defendants Blount Parrish, Gardnyr Michael Capital and other, fictitiously named defendants, were also involved in the 2004 $1.5 billion swap agreement.

52.     Defendant Blount Parrish, however, never disclosed its relationship with Langford prior to participating in the bond swap agreement.

53.     Likewise, Langford failed to disclose his relationship with Blount Parrish.

54.     This relationship included, upon information and belief, William Blount's assistance in helping Langford secure a $50,000 loan, even though Langford had considerable debt and a poor credit score.

55.     Further, upon information and belief, through a series of transactions Blount paid off Langford's loan to the bank which held the note.

56.     Langford needed an additional $75,000, which was provided to him, upon information and belief, by Blount through a series of transactions.

57.     None of this information was disclosed in the transactions in which both Langford and Blount participated in, whether or not Blount's participation was direct or indirect.

58.     At the conclusion of the aforesaid transactions, Jefferson County's percentage of fixed rate debt was only 6% compared to 94% of floating or adjustable rates, which were based on agreement or set by auction, a sharp contrast from where the bond interest rate status in October 2002.

59.     Further, the transactions in 2003 refinanced debt that was issued in 2002.

60.     All the aforesaid transactions involved the participation of one or more of the following Defendants: Morgan Keegan, Regions Bank, JP Morgan, Charles LeCroy, Goldman Sachs, Blount Parrish, William Blount, Bank of America, Lehman Brothers and other fictitiously named parties.

61.     These Defendants conspired to usurp and/or defraud Plaintiffs by taking excess fees for their services.

62.     This included Defendants JP Morgan, Bank of America, Bear Sterns, Lehman

15

Brothers and other Defendants, both named and fictitious defendants, who charged, upon information and belief, about $50 million above prevailing prices for their services provided to Jefferson County.

63. Further, upon information and belief, in total, as much as $100 million in excessive fees, (at six times the prevailing rate), was levied against the county for 17 different swap transactions.

64. Upon information and belief, these excessive fees, however, were not disclosed to the Jefferson County commissioners.

65. Further, these parties, upon information and knowledge, considering the complexity of the transactions, served both as financial advisor and underwriter, and thus, breached their fiduciary duty by encouraging, allowing, and/or suggesting floating and/or adjustable rate transactions for municipal finance.

66. Additionally, these Defendants, upon information and knowledge, failed to fully disclose the risks inherent in moving from fixed rate debt to floating and/or adjustable rate debt, whether set by agreement, auction or otherwise.

67. These transactions, both individually and in sum, positioned Jefferson County and Plaintiffs for disaster.

68. As trained, both by education and experience, underwriters, swap providers, advisors, remarketing agents etc., these Defendants had a duty to warn, discourage, and/or prevent Jefferson County from taking a market position and/or an uncovered position by moving away from fixed rates and exposing themselves to the volatility of a floating and/or adjustable

16

rate set by agreement, auction or otherwise.

69.     Instead, Defendants encouraged, conspired and/or counseled that these multiple transactions be entered into at Plaintiffs detriment and for the Defendants own personal, professional and monetary benefit.

70.     Defendants, therefore, disregarded any and all duties of professionalism, candor, fiduciary, and good faith by their actions both individually and jointly and severally.

71.     Additionally, Defendants Financial Guaranty Insurance Co. and XL Capital Assurance Inc. negligently, wantonly and/or fraudulently "insured" Jefferson County's bonds.

72.     Their failure to properly insure the bonds have increased Jefferson County's vulnerability to market volatility and have injured Plaintiffs.

73.     Coinciding with the aforesaid egregious behavior on behalf of all Defendants, Plaintiffs sewer bills increased 7.7% in January 2008 and upon information and belief, Plaintiffs sewer bills have increased 329% since 1997.

74.     Further, the actions of Defendants have left a debt load of $11,491 for each of its residential customers, which is the highest debt to residential customer ratio in the nation.

## CLASS ACTION ALLEGATIONS

75.     Plaintiffs bring this action on behalf of themselves and as a class action under the provisions of Rule 23(a), (b)(2) and (b)(3) of the Alabama Rules of Civil Procedure on behalf of all members of the following Class:

All persons and/or entities who paid for sewer service in Jefferson County, Alabama at any time, from January 1, 1993 until the present, and all other citizens and/or residents of Jefferson County, Alabama who are damaged as a result of the conduct alleged herein.

76.     The Class excludes:

a.  Persons presently in bankruptcy proceedings or those wherein their recovery would be property of a bankruptcy estate;

b.  Persons having pending against one or more of the named Defendants, on the date of the Court's certification order, any individual action wherein recovery sought is based in whole or in part on the type of claims asserted in this action.;

c.  Persons currently serving as a judge in Jefferson County, Alabama; and

d.  All members, including attorneys and staff, of any law firm which serves as counsel for Plaintiffs.

77.     Plaintiffs do not know the exact number of class members, but upon information and belief the number is between 146,000 residences and 800,000 citizens.

78.     A class of this size is so numerous that joinder of all members is impractical.

79.     Further, there are numerous questions of law and fact common to the Class, including:

a.  Whether Defendants, both named and fictitious, engaged in a combination and conspiracy among themselves to fix, maintain or stabilize prices, and rig bids

18

and allocate customers and markets of Municipal derivatives.

b. Whether Defendants, both named and fictitious, failed to properly capitalize their portfolio of investments to ensure that the product and/or service that was offered to Jefferson County for the benefit of Plaintiffs could be delivered to ensure the protection for unforeseen events that was the intended benefit of the offered product and/or service.

c. Whether Defendants, both named and fictitious, failed to properly disclose the inherent risks of moving from fixed rate to floating and/or adjustable rate securities whether set by agreement or by auction.

d. Whether Defendants, both named and fictitious, exceeded their power, authority and scope of their elective office in saddling Plaintiffs with a debt load of $11,491 per residential customer and increasing their sewer rates by 329% and depriving the taxpaying citizens of Jefferson County, Alabama of funds which should have been dedicated to building and repairing the new sewer system in accordance with the terms and conditions of the settlement of the lawsuit brought by taxpayers of Jefferson County and the Environmental Protection Agency in 1996.

e. Whether the rate increase of 7.7% in January 2008 and other prior rate increases that have led to a 329% increase in sewer rates and/or the insufficient funds to adequately replace and repair the sewer system due to the debt load can be attributed to the actions of all Defendants, jointly and

19

severally, in causing harm to Plaintiffs.

    f.   The appropriate class-wide measure of damages.

80.    Plaintiffs are member of the Class, Plaintiffs' claims are typical of the claims of Class members, and Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs are ratepayers of the Jefferson County sewer system, who pay for the use of this service and the taxpayers of Jefferson County. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Class.

81.    Plaintiffs are represented by Counsel who is competent and experienced in the prosecution of class action lawsuits.

82.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

83.    The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

84.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The Class is readily definable and is one for which records do exist.  Prosecution as a class action will eliminate the possibility of repetitious litigation. Treatment of a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender.  This class action presents

20

no difficulties in management that would preclude maintenance as a class action.

## COUNT I
## NEGLIGENCE
### (Against Financial Guaranty Insurance Company and XL Capital Assurance, Inc.)

85.     Plaintiffs hereby adopt all of the previous facts and factual averments contained in paragraphs 1-84 and incorporate them by reference herein.

86.     Defendants, Financial Guaranty Insurance Company (hereinafter "FGIC") and XL Capital Assurance, Inc. (hereinafter "XL-CA") had a duty to properly capitalize themselves.

87.     As providers of insurance, they offered themselves into the community as offering a line of defense against unforeseen events.

88.     In particular, they offered to insure the Jefferson County Bond issues and related securities.

89.     Upon information and belief, Defendant FGIC insured $1.56 billion of Jefferson County auction-rate securities and Defendant XL-CA backed $397 million.

90.     These Defendants, due to their negligence failed to have enough assets to meet their outstanding liabilities, which caused their ratings to be downgraded.

91.     The respective lowering of these Defendants' rating negatively affected the value of the Jefferson County bond issues and related securities in that potential investors were substantially less likely to chose to invest in auctionable investments not sufficiently insured.

92.     Said conduct by the Defendants proximately caused the damages as follows:

21

a. Plaintiff and members of the class have, are and will be caused to suffer substantial monetary damages in the form of inflated sewer service rates;

b. Plaintiff and members of the purported class have been deprived of money that should have been dedicated to the building, repair, maintenance and operation of a working sewer system;

c. Plaintiff and members of the purported class have become obligated to repay a debt that should never have accumulated;

d. Plaintiff and members of the purported class will remain obligated to repay a debt that should never have accumulated;

e. Plaintiff and members of the class are otherwise injured and damaged.

WHEREFORE, Plaintiffs demand judgment against all Defendants and Fictitious Defendants Numbered One through Five Hundred Eighty Two, jointly and severally, for damages, both compensatory and punitive, the sum to be determined by a jury, or injunctive relief which will fairly and adequately compensate Plaintiffs for the above described damages, together with interest from the date of the incident and costs of the proceeding.

## COUNT II
## BREACH OF FIDUCIARY DUTY
## (Against all Defendants)

93.     Plaintiffs hereby adopt all of the previous facts and factual averments contained in paragraphs 1-92 and incorporate them by reference herein.

94.     All Defendants, both named and fictitious, who gave advice concerning the

Jefferson County Bond issues and related swap transactions owed a fiduciary duty to Plaintiffs to act for the benefit of the county ratepayer and taxpayer.

95.     Upon information and belief, the advice provided by said defendants was not designed to benefit the Plaintiff but instead was designed to enrich the Defendants to the detriment of the Plaintiffs.

96.     The advice provided by the Defendants both named and fictitious, upon information and belief, encouraged Jefferson County officials to accept multiple fixed for floating transactions. Defendants knew or should have known at the time said advice was given that it was to the detriment of the Plaintiffs by virtue of the type of risk inherent in said transactions.  As a result Plaintiffs were placed in serious financial peril.

97.     Further, the advice and counsel offered by Defendants, upon information and belief, led Jefferson County officials to accept the terms of the offers made by Defendants FGIC and XL-CA and to accept these Defendants as insurers of the bond issue even though, upon information and belief, at the time said advice and counsel was given said insurers (FGIC and XL-CA) were in danger of becoming undercapitalized which was known to the Defendants at that time.

98.     Said breach of fiduciary duty of the Defendants proximately damaged Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against all Defendants and Fictitious Defendants Numbered One through Five Hundred Eighty Two, jointly and severally, for damages, both compensatory and punitive, the sum to be determined by a jury, or injunctive relief which will fairly and adequately compensate Plaintiffs for the above described damages, together with interest from the date of the incident and costs of the proceeding.

23

## COUNT III
### CONSPIRACY TO DEFRAUD, MISREPRESENTATION, MISTAKEN MISREPRESENTATION, NEGLIGENT MISREPRESENTATION, CONSTRUCTIVE FRAUD, SUPPRESSION, AND/OR FRAUD
### (Against all Defendants)

99.     Plaintiffs hereby adopt all of the previous facts and factual averments contained in paragraphs 1-98 and incorporate them by reference herein.

100.     Defendants, both named and fictitious, in their offering and delivery of financial services to Jefferson County for fees participated in a conspiracy to defraud Plaintiffs.  At the time the services were offered by the Defendants to County officials, the Defendants knew or had reason to know that the services for which they were charging were excessive and not being offered in a fiduciary capacity in the best interest of the Plaintiffs.  Rather the services and excessive rates charged for said services were designed to defraud the plaintiffs and cause then to incur fees several time the normal rate in exchange for said series.  Defendants know at the time they charged the excessive fees that they bore no rations relationship to the services offered or provided.

101.     Upon information and belief, Defendants, in furtherance of a conspiracy to obtain excessive fees, the Defendants, both named and fictitious, marketed that the complexity of the financial transactions were the basis for said transactions to be privately negotiated rather than competitively bid.

102.     Defendants also failed to properly disclose the risks inherent in moving from a fixed to floating and/or adjustable rate whether set by agreement, auction or otherwise.

24

103.     Further, upon information and belief, Defendants failed to properly disclose the risks inherent in entering into multiple swap transactions and/or debt refinance transactions.

104.     Upon information and belief, these actions by Defendants included conspiracy to misrepresent, misrepresentations and/or suppression of material facts, which if disclosed would have prevented Jefferson County officials acting on behalf of the Plaintiffs from entering into the bond refinance and/or swap transactions.

105.     Upon information and belief, Defendants deceived and/or misled County officials into acting for the benefit of Defendants.

106.     Upon information and belief, Defendants actions were part of a conspiracy, scheme and/or plan to defraud through the entering into of unnecessary transactions in order to generate additional fees, failing to fully disclose the extent and recipients of said fees, and setting the fees for these transactions at exorbitant rates.

107.     Further, Defendants offer of services and payment for those services at exorbitant rates constituted constructive fraud.

108.     Said fraud and/or constructive fraud did not necessitate individual reliance from each Plaintiff.

109.     Said fraud and/or constructive fraud was committed on Plaintiffs as a Class, not individually.

110.     Said conduct by the Defendants proximately caused the damages described herein.

WHEREFORE, Plaintiffs demand judgment against all Defendants and Fictitious

Defendants Numbered One through Five Hundred Eighty Two, jointly and severally, for damages, both compensatory and punitive, the sum to be determined by a jury, or injunctive relief which will fairly and adequately compensate Plaintiffs for the above described damages, together with interest from the date of the incident and costs of the proceeding.

**COUNT IV**
**ACTIONS OUTSIDE THE SCOPE OF DUTIES AND/OR ULTRA VIRES ACT**
**(Against Langford, White, Collins, Germany, Buckalew, Small, Smoot)**

111. Plaintiff hereby adopts all of the previous factual averments contained in paragraphs numbered 1- 110 and incorporates them by reference herein.

112. Jefferson County Commission Presidents Larry Langford and Gary White, upon information and belief, operated outside the scope of their duties of Jefferson County Commission President.

26

113.     They failed to competitively bid all bond issuance and swap transactions entered into by the County.

114.     They failed to competitively bid all bond issuance and swap transactions entered into by the County.

115.     They failed to competitively bid all bond issuance and swap transactions entered into by the County.

116.     These transactions should have been bid, however, in a competitive bid process consistent with the County by-laws.

117.     Further, the County Officials named as Defendants herein in contravention of the best interests of the Plaintiff taxpayers and sewer rate payers and members of the putative class entered into multiple transactions to "refinance" or "swap" debt when such transactions added to the financial burden, via excess fees for unbid transactions and/or deals that exposed to Plaintiffs and putative class members to unnecessary risks.

118.     County Commission members Collins, Small, Smoot, Buckalew, and Germany acted outside the scope of their duties, exceeded the limits of their power and/or committed an ultra vires act by approving via resolution any and all debt and/or swap transactions.

119.     Further, the Defendant Commissioners failed to act in the best interest of the public for whom they were sworn to serve by failing to have any debt issuance or swap transaction competitively bid and failing to take action to thwart the increasing financial burden of sewer fees and/or debt per sewer user.

27

120. Under the Alabama Constitution Art. I Sec. 2, "all political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit."

121. Further, the Alabama Constitution Art. I. Sec. 35, sets out that "the sole object and only legitimate end of government is to **protect** the citizen in the enjoyment of life, liberty, and property, and **when government assumes other functions it is usurpation and oppression**." (emphasis added).

122. The above described actions of the Commissioner Defendants failed to protect the citizens, residents, sewer ratepayers and taxpayers of Jefferson County, therefore, constituted ultra vires acts as all Commissioner Defendants acted beyond the scope of their duties and/or exceeded the limit of their powers. The duties of County Commissioners do not include the usurpation and oppression of Plaintiffs.

123. Such conduct was the proximate cause of Plaintiffs' damages.

WHEREFORE, Plaintiffs demand judgment against all Defendants and Fictitious Defendants Numbered One through Five Hundred Eighty Two, jointly and severally, for damages, both compensatory and punitive, the sum to be determined by a jury, or injunctive relief which will fairly and adequately compensate Plaintiffs for the above described damages, together with interest from the date of the incident and costs of the proceeding.


## COUNT V
## BREACH OF CONTRACT – THIRD PARTY BENEFICIARY
## (Against all Defendants)

124. Plaintiffs hereby adopt all of the previous factual averments contained in paragraphs numbered 1- 123 and incorporates them by reference herein.

125. Upon information and belief, Defendants entered into a contract to provide financial services, products and/or advice.

126. The parties to the contract intended to bestow a direct benefit upon a third party, Plaintiffs.

127. Upon information and belief, the reasoning behind the financial transactions was to provide relief to Plaintiffs in the form of lower sewer fees and/or rates.

128. Therefore, Plaintiffs were the intended beneficiaries of said contract.

129. This contract, however, was breached.

130. Plaintiffs have not received the promised relief.

131. Defendants, in their knowledge of financial markets, knew or should have known that the resulting harm to Plaintiffs was a very real possibility.

132. Upon information and belief, Defendants, however, did not refuse to contract on the terms agreed upon.

133. Further, Defendants received valuable consideration.

134. Plaintiffs, on the other hand, have received additional pain in the form of a higher debt load per residential sewer customer and higher fees.

135. Said breach on part of Defendants proximately caused Plaintiffs harm and injuries described herein.

WHEREFORE, Plaintiffs demand judgment against all Defendants and Fictitious

Case 11-00433-TBB    Doc 16    Filed 12/16/11    Entered 01/26/12 09:53:01    Desc
1-2008.06.17_Complaint    Page 29 of 44

Defendants Numbered One through Five Hundred Eighty Two, jointly and severally, for damages, both compensatory and punitive, the sum to be determined by a jury, or injunctive relief which will fairly and adequately compensate Plaintiffs for the above described damages, together with interest from the date of the incident and costs of the proceeding.

## COUNT VI
## BREACH OF CONTRACT - THIRD PARTY BENEFICIARY
## (Against all Defendants)

136.     Plaintiffs hereby adopt all of the previous factual averments contained in paragraphs numbered 1- 135 and incorporates them by reference herein.

137.     Upon information and belief, Defendants entered into a contract to provide financial services, products and advice regarding financial transactions for sewer bonds.

138.     The parties to the contract intended to bestow a direct benefit upon a third party, Plaintiffs.

139.     Upon information and belief, the reasoning behind the financial transactions was to provide relief to Plaintiffs in the form of lower sewer fees and/or rates.

140.     Therefore, Plaintiffs were the intended beneficiaries of said contract.

141.     This contract was breached.

142.     Plaintiffs have not received the promised relief.

143.     Defendants, in their knowledge of financial markets, knew or should have known that the resulting harm to Plaintiffs was a very real possibility.

144.     Upon information and belief, Defendants, however, did not refuse to contract on

30

the terms agreed upon.

145.    Further, Defendants received valuable consideration.

146.    Plaintiffs, on the other hand, have received higher debt load per residential sewer customer and higher fees.

147.    Said breach on part of Defendants proximately caused Plaintiffs harm and damages described herein.

WHEREFORE, Plaintiffs demand judgment against all Defendants and Fictitious Defendants Numbered One through Five Hundred Eighty Two, jointly and severally, for damages, both compensatory and punitive, the sum to be determined by a jury, or injunctive relief which will fairly and adequately compensate Plaintiffs for the above described damages, together with interest from the date of the incident and costs of the proceeding.

## COUNT VII
## UNJUST ENRICHMENT
## (Against all Defendants)

148.    Plaintiffs hereby adopt all of the previous factual averments contained in paragraphs numbered 1-147 and incorporates them by reference herein.

149.    Upon information and belief, Defendants have received fees, kickback and other premiums which far outweigh any purported service and/or product provided for the benefit of Plaintiffs.

150.    Therefore, Defendants have been unjustly enriched.

151.    Said unjust enrichment has proximately harmed and/or injured Plaintiff.

31

WHEREFORE, Plaintiffs demand judgment against all Defendants and Fictitious Defendants Numbered One through Five Hundred Eighty Two, jointly and severally, for damages, both compensatory and punitive, the sum to be determined by a jury, or injunctive relief which will fairly and adequately compensate Plaintiffs for the above described damages, together with interest from the date of the incident and costs of the proceeding.

## COUNT VIII
## MONEY HAD AND RECEIVED
### (Against all Defendants)

152.    Plaintiffs hereby adopt all of the previous factual averments contained in paragraphs numbered 1- 151 and incorporates them by reference herein.

153.    Upon information and belief, Defendants have received fees, kickback and other premiums which rightfully belong to Plaintiffs.

154.    The law creates an implied promise by the Defendants to pay it to the Plaintiff.

155.    Defendants have breached said implied promise.

156.    Said breach has proximately harmed and/or injured Plaintiff.

WHEREFORE, Plaintiffs demand judgment against all Defendants and Fictitious Defendants Numbered One through Five Hundred Eighty Two, jointly and severally, for damages, both compensatory and punitive, the sum to be determined by a jury, or injunctive relief which will fairly and adequately compensate Plaintiffs for the above described damages, together with interest from the date of the incident and costs of the proceeding.

## COUNT IX

32

## CONSPIRACY
## (Against all Defendants)

157.     Plaintiffs hereby adopt all of the previous factual averments contained in paragraphs numbered 1- 156 and incorporates them by reference herein.

158.     Upon information and belief, Defendants conspired to defraud Plaintiffs.

159.     Their actions in forming contracts which benefited and enriched themselves while placing current and future generations at risk of increased fees and indebtendness was part of a conspiracy usurp and oppress Plaintiffs while Defendants were enriched.

160.     These overt acts caused damage to Plaintiffs.

161.     As a result of the aforesaid conduct, Plaintiffs were proximately harmed and/or injured.

WHEREFORE, Plaintiffs demand judgment against all Defendants and Fictitious Defendants Numbered One through Five Hundred Eighty Two, jointly and severally, for damages, both compensatory and punitive, the sum to be determined by a jury, or injunctive relief which will fairly and adequately compensate Plaintiffs for the above described damages, together with interest from the date of the incident and costs of the proceeding.


## COUNT X
## REQUEST FOR DECLARATORY RELIEF – RETURN OF FEES
## (Against all Defendants)

33

162.    Plaintiffs hereby adopt all of the previous factual averments contained in paragraphs numbered 1- 161 and incorporates them by reference herein.

163.    Plaintiffs have been harmed by Defendants in that the level of personal indebtedness of Plaintiffs has risen to the highest level in the nation.

164.    Further, Plaintiffs have experienced ever increasing sewer fees and/or rates.

165.    Plaintiffs therefore request declaratory relief in the form of the return of fees received as a result of Defendants wrongful conduct.

166.    As a result of the aforesaid conduct as described herein, Plaintiffs were proximately harmed and/or injured, and therefore, request that injunctive relief be instituted.

WHEREFORE, Plaintiffs demand judgment against all Defendants and Fictitious Defendants Numbered One through Five Hundred Eighty Two, jointly and severally, for damages, both compensatory and punitive, the sum to be determined by a jury, or injunctive relief which will fairly and adequately compensate Plaintiffs for the above described damages, together with interest from the date of the incident and costs of the proceeding.

### COUNT XI
### NEGLIGENCE
### (Against all Defendants)

167.    Plaintiffs hereby adopt all of the previous factual averments contained in paragraphs numbered 1- 166 and incorporates them by reference herein.

168.    Defendants had a duty to act in the best interest of Plaintiffs and/or in keeping with professional and/or industry standards related to the issuance of debt and debt related securities to a governmental entity.

34

169.    Defendants, however, breached said duty by engaging, creating and assisting in the issuance of bonds and/or related security transitions ("swaps"), which effectively placed Plaintiffs at risk of exorbitant fees and/or debt loads to be

170.    As a result of the aforesaid conduct as described herein, Plaintiffs were proximately harmed and/or injured

WHEREFORE, Plaintiffs demand judgment against all Defendants and Fictitious Defendants Numbered One through Five Hundred Eighty Two, jointly and severally, for damages, both compensatory and punitive, the sum to be determined by a jury, or injunctive relief which will fairly and adequately compensate Plaintiffs for the above described damages, together with interest from the date of the incident and costs of the proceeding.


## COUNT XII
## BREACH OF CONTRACT – THIRD PARTY BENEFICIARY
## (Against all Financial Guaranty Insurance Company and XL Capital Assurance, Inc.)

171.    Plaintiffs hereby adopt all of the previous facts and factual averments contained in paragraphs 1-170 and incorporate them by reference herein.

172.    As providers of insurance, they offered themselves into the community as offering a line of defense against unforeseen events.

173.    In particular, they offered to insure the Jefferson County Bond issues and related securities.

174.	Upon information and belief, Defendant FGIC insured $1.56 billion of Jefferson County auction-rate securities and Defendant XL-CA backed $397 million of bonds.

175.	Upon information and belief, Defendants entered into a contract to provide financial services, insurance, products and/or advice.

176.	The parties to the contract intended to bestow a direct benefit upon a third party, Plaintiffs.

177.	Therefore, Plaintiffs were the intended beneficiaries of said contract.

178.	This contract, however, was breached when Defendants rating was downgraded.

179.	Further, Defendants received valuable consideration.

180.	Plaintiffs, on the other hand, have received higher debt load per residential sewer customer and higher fees.

181.	Their downgraded rating affected the attractiveness of the Jefferson County bond issues and related securities to potential investors of auctionable investments.

182.	Said conduct by the Defendants proximately caused the damages described herein.

WHEREFORE, Plaintiffs demand judgment against all Defendants and Fictitious Defendants Numbered One through Five Hundred Eighty Two, jointly and severally, for damages, both compensatory and punitive, the sum to be determined by a jury, or injunctive relief which will fairly and adequately compensate Plaintiffs for the above described damages, together with interest from the date of the incident and costs of the proceeding.

## COUNT XIII

## BREACH OF IMPLIED CONTRACT – THIRD PARTY BENEFICIARY
## (Against all Financial Guaranty Insurance Company and XL Capital Assurance, Inc.)

183.     Plaintiff hereby adopts all of the previous facts and factual averments contained in paragraphs 1-182 and incorporate them by reference herein.

184.     As providers of insurance, they offered themselves into the community as offering a line of defense against unforeseen events.

185.     In particular, they offered to insure the Jefferson County Bond issues and related securities.

186.     Upon information and belief, Defendant FGIC insured $1.56 billion of Jefferson County auction-rate securities and Defendant XL-CA backed $397 million of bonds.

187.     Upon information and belief, Defendants entered into a contract to provide financial services, insurance, products and/or advice.

188.     The parties to the contract intended to bestow a direct benefit upon a third party, Plaintiffs.

189.     Therefore, Plaintiffs were the intended beneficiaries of said contract.

190.     This contract, however, was breached when Defendants rating was downgraded.

191.     Further, Defendants received valuable consideration.

192.     Plaintiffs, on the other hand, received higher debt load per residential sewer customer and higher fees.

193.     Their downgraded rating affected the attractiveness of the Jefferson County bond issues and related securities to potential investors of auctionable investments.

37

194.     Said conduct by the Defendants proximately caused the damages described herein.

WHEREFORE, Plaintiffs demand judgment against all Defendants and Fictitious Defendants Numbered One through Five Hundred Eighty Two, jointly and severally, for damages, both compensatory and punitive, the sum to be determined by a jury, or injunctive relief which will fairly and adequately compensate Plaintiffs for the above described damages, together with interest from the date of the incident and costs of the proceeding.

**COUNT XIV**
**CONSPIRACY**
**(Against Langford, Blount and Blount Parrish, Co.)**

195.     Plaintiffs hereby adopt all of the previous factual averments contained in paragraphs numbered 1- 194 and incorporates them by reference herein.

196.     Upon information and belief, Defendants Langford, Blount and Blount Parrish, Co. conspired to defraud Plaintiffs.

197.     Blount secured and paid off a $50,000 loan for Langford's benefit.

198.     Blount also passed, through a series of transactions, $75,000 to Langford.

199.     Neither the paying off of the $50,000 loan nor the $75,000 was ever disclosed by Langford or Blount in the Jefferson County financial transactions in which they participated.

200.     Blount and Langford formed a relationship and a conspiracy to defraud Plaintiffs

38

for the Defendants own benefit and enrichment.

201.     Their overt acts, in arranging unnecessary bond and swap transactions, caused damage to Plaintiffs.

202.     As a result of the aforesaid conduct, Plaintiffs were proximately harmed and/or damaged.

WHEREFORE, Plaintiffs demand judgment against all Defendants and Fictitious Defendants Numbered One through Five Hundred Eighty Two, jointly and severally, for damages, both compensatory and punitive, the sum to be determined by a jury, or injunctive relief which will fairly and adequately compensate Plaintiffs for the above described damages, together with interest from the date of the incident and costs of the proceeding.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray as follows:

A. That this Honorable Court determine that this action may be maintained as a class action under Rule 23 of the Alabama Rules of Civil Procedure;

B. That judgment be entered for Plaintiffs and members of the Class against Defendants for monetary damages sustained by Plaintiffs as a result of the herein described wrongful conduct and actions between 1993 and 2008;

C. That judgment be entered for Plaintiffs and members of the Class against Defendants for the disgorgement of fees, kickbacks and premiums received by Defendants as a result of the herein described wrongful conduct and actions between 1993 and 2008;

39

D. That the Court award injunctive relief against Defendants and prevent future excessive fees from being paid and that this Court set-aside the transactions that are made the basis of this case as all were entered into in contravention of Alabama law;

E. That the Court award injunctive relief in the form of the disgorgement of fees, kickbacks and premiums received by Defendants as a result of the herein described wrongful conduct and actions between 1993 and 2008;

F. That the Plaintiffs and the Class be awarded interest at the highest legal rate available under law related to excessive fees and kickbacks;

G. That attorney for Plaintiffs be awarded attorney's fees; and

H. That the Plaintiffs and members of the Class have such other, further or different relief as the case may require and the Court may deem just and proper under the circumstances.


## PLAINTIFFS DEMAND TRIAL BY STRUCK JURY

.


/s/ Kathryn S. Harrington
Kathryn S. Harrington (SUM-002)
Attorney for the Plaintiffs


**OF COUNSEL:**

HOLLIS, WRIGHT & HARRINGTON, P.C.
1500 Financial Center
505 North 20th Street
Birmingham, Alabama 35203
(205) 324-3600
(205) 324-3636

40

kathrynh@hollis-wright.com

**PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL AS FOLLOWS:**

JPMorgan Chase Bank
c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, AL  36109

Morgan Keegan & Company, Inc.
c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, AL  36109

Regions Bank
c/o CSC Lawyers Incorporating SVC INC
150 S. Perry Street
Montgomery, AL  36104

Charles LeCroy
870 Mayfield Ave
Winter Park, FL  32789

Douglas MacFaddin
22 Cottontail Rd
Cos Cob, CT  06807-1104

Goldman Sachs Specialty Lending Group, L.P.
c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, AL  36109

41

Bear Stearns Funding, Inc.
c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, AL  36109

Blount Parrish & Roton Inc.
c/o William B. Blount
25 Washington Ave.
Montgomery, AL  36104

William Blount
10 Court Square
Montgomery, AL  36104-3701

Bank of America, National Association
c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, AL  36109

Lehman Brothers, Inc.
c/o Prentice Hall Corporation Sys Inc.
150 S. Perry Street
Montgomery, AL  36104

Gardnyr-Michael Capital, Inc.
c/o Pfilip G. Hunt, Jr.
Suite 212
One Office Park
Mobile, AL  36609

Larry Langford
Mayor of Birmingham
710 20th Street North
Birmingham, AL 35203

Gary White
1000 Chestnut Street, Suite 200
Birmingham, AL  35216

Steve Small

42

1801 Biko Pl
Birmingham, AL  35211

Bettye Fine Collins
Commission President
Jefferson County Commission
Jefferson County Courthouse
716 Richard Arrington Jr. Blvd North
Birmingham, AL  35203

Jeff Germany
927 Brandy Ln
Birmingham, AL  35214-3901

Mary Buckalew
3 White Street
Brent, AL  35034

Sheila Smoot
Jefferson County Commission
Jefferson County Courthouse
716 Richard Arrington Jr. Blvd North
Birmingham, AL  35203

Steve Saylor
Former Finance Director
Jefferson County
2417 Walking Fern Ln
Birmingham, AL  35244-1476

CDR Financial Services, Inc.
c/o Daniel F. Rooney, Jr.
28592 Silverton Drive
Lagoona Miguel, CA  92677

Financial Guaranty Insurance Company
c/o CSC Lawyers Incorporating SVC INC
150 S. Perry Street
Montgomery, AL  36104

XL Capital Assurance Inc.

43

c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, AL  36109